**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CRAIG KIMMEL,** *individually, and on behalf of all others similarly situated,* ) ) ) | Civil Action No. _____ |
| Plaintiff, ) ) | CLASS ACTION |
| v. ) ) ) | |
| **EURO MOTORCARS MAIN LINE, LLC d/b/a BMW OF THE MAIN LINE,** ) ) ) | **Jury Trial Demanded** |
| Defendant. ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Craig Kimmel ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, submits his Complaint against Defendant, Euro Motorcars Main Line, LLC d/b/a BMW of the Main Line ("Defendant"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1. Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA") sets forth restrictions on the use of automated telephone equipment and prerecorded voice calls, and provides in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> *****
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

2. Upon information and good faith belief, Defendant routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by placing non-emergency telephone calls to consumers' cellular telephone numbers by using an artificial or prerecorded voice, without the prior express consent of the consumers.

3. The calls at issue are marketing calls targeting consumers that do not have any relationship with Defendant that attempt to solicit them to visit Defendant's service department so that Defendant can service the consumer's vehicle and generate revenue from the consumer.

## BACKGROUND ON THE TCPA

4. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

5. A leading sponsor of the TCPA described telemarketing "robocalls" as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

7. In fact, in 2021 alone, there were over *five million complaints* from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

8.  In 2023 alone, approximately 55 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited February 6, 2024).

9.  The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, The FCC Has Fined Robocallers $208 Million. It's Collected $6,790, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

10.  This Court has subject-matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

11.  This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District and Defendant directed its prerecorded calls to Plaintiff from this District..

12.  Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to this action occurred in this District.

## PARTIES

13.  Plaintiff is a natural person who, at all relevant times, resided in New Hope, Pennsylvania.

14.  Plaintiff is, and at all relevant times was, a "person" as that term is defined by 47 U.S.C. §153(39).

15.  Defendant is a limited liability company organized and existing under the laws of

the Commonwealth of Pennsylvania with its principal place of business at 225 Bala Ave, Bala Cynwyd, Pennsylvania.

16. Defendant is, and at all relevant times was, a "person" as that term is defined by 47 U.S.C. §153(39).

17. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

18. At all times relevant hereto, Plaintiff is and was the owner, subscriber and customary user of a cell phone, the number for which was (267) XXX-7703.

19. On or around April 8, 2024 at 2:07 pm, Defendant placed a call from telephone number (610) 665-3805 to Plaintiff's cellular telephone and left the following pre-recorded message on Plaintiff's voicemail:

> Hi there! And yes, this is a recording, but it could save your life. I'm Tori from BMW Mini of Main Line and your 2009 BMW X-6 needs service now. It has a serious recall, and we can fix it for you – for free. Just call 610-665-3805 to talk to our recall service team and they will schedule your appointment right away.

20. Plaintiff knew the call featured a pre-recorded message because the tone and cadence of the message was computerized.

21. The message also included awkward pauses before "BMW Mini of Main Line", and the year and vehicle model, which is likely because the system was configured to call from a database and input the dealership name and a specific vehicle year, make and model.[1]

---

[1] Plaintiff's initial investigation has revealed that this same marketing scheme is used by different dealers across the country. *See, e.g.* https://directory.youmail.com/phone/720-790-3454 (last accessed Oct. 1, 2024) (consumer report of same recording featuring Tori but for "Sport Mazda South" regarding a "2007 Mazda."); https://directory.youmail.com/phone/407-871-3152 (last accessed Oct. 1, 2024) (consumer reports of same recording featuring Tori but for "Antwepren CDJR" regarding a "2012 Dodge Avenger" and Sutherland Nissan Orlando for a "2014 Nissan Altima").

22. Further, the message stated "this is a recording."

23. Plaintiff never provided express written consent – or any consent- for Defendant to place calls which utilized a pre-recorded voice to his cell phone.

24. Plaintiff does not have, nor did he have, a relationship with Defendant.

25. Plaintiff is not, nor was, a customer of Defendant.

26. Plaintiff did not, and never has, purchased any vehicles from Defendant.

27. Plaintiff does not own, and never owned a 2009 BMW X-6.

28. Plaintiff did not provide his cellular telephone number to Defendant.

29. Upon information and good faith belief, Defendant placed the subject calls, in connection with which it used an artificial or prerecorded voice, to Plaintiff, for non-emergency purposes.

30. Upon information and good faith belief, Defendant's reference to a "recall" was a marketing scheme designed to increase the likelihood that a consumer would call back and schedule an appointment with Defendant where Defendant could then solicit the consumer with its products and services.

31. For example, Defendant has a business model where it promotes repair, upgrades and maintenance services through its performance of recalls on BMW vehicles, which is reflected on Defendant's webpage, an excerpt of which is set forth below:





32. Upon information and good faith belief, Defendant's outbound prerecorded telephone calls were not in regard to any specific vehicle recall.

33. For example, Plaintiff does not own, and has never owned a 2009 BMW X-6, and therefore the call could not have been for emergency purposes. Rather, the call was for telemarketing purposes to use a recalls as a pretext for selling vehicles and/or maintenance services.

34. Upon information and good faith belief, Defendant acquired "leads" or consumer information for individuals within a certain proximity of their dealership and placed calls to them in an attempt to solicit them to become customers of Defendant.

35. For example, when the telephone number that was left in the prerecorded message received by Plaintiff is called back (*i.e*., 610-665-3805), a prerecorded message plays that states:

> Hey. This is Tori from BMW and Mini of Main Line. I'm here to help you with your recalled vehicle. Our records show you own a brand we service. If that's correct press one. If not, press two.

36. Upon information and belief, Defendant uses this message to prescreen callbacks and eliminate callers that do not have a BMW or Mini because Defendant is not certain if the consumer data or leads it purchased to place its prerecorded calls are accurate.

37. When a consumer presses one, the prerecorded or artificial voice states that the call is being transferred to a "recall representative."

38. Upon information and good faith belief, when a consumer would connect to Defendant, Defendant would use that opportunity to market or solicit its products or services.

39. When a consumer presses two, the prerecorded or artificial voice states, "Thanks for the feedback, we will update our records. Have a great day" and then the call is terminated.

40. Defendant placed the subject calls, in connection with which it used an artificial or prerecorded voice, to Plaintiff voluntarily.

41. Defendant placed the subject calls, in connection with which it used an artificial or prerecorded voice, to Plaintiff under its own free will.

42. Defendant had knowledge that it was using an artificial or prerecorded voice in connection with the calls it placed to Plaintiff.

43. Plaintiff suffered actual harm as a result of Defendant's subject calls in connection with which it used an artificial or prerecorded voice, in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

44. For example, Plaintiff spent time tending to the call, including listening to the prerecorded voice message Defendant played or delivered.

45. Defendant's prerecorded messages also utilized Plaintiff's voicemail, occupied the capacity of Plaintiff's cellular telephone, and depleted his battery.

46. Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an artificial or prerecorded voice in connection with calls it places to telephone numbers assigned to a cellular telephone service, absent prior express consent.

## Direct and Vicarious Liability

47. Without having had the benefit of discovery to show otherwise, Defendant is directly liable for the unsolicited calls at issue because they were placed or made directly by Defendant.

48. Alternatively, and to the extent discovery reveals that some or all of the calls were made by third-party/parties acting on behalf of or at the direction of Defendant, then Defendant is vicariously liable for those calls.

49. On May 9, 2013, the FCC determined the fact calls were not directly made by a given "seller" but rather a telemarketing agent on the seller's behalf, was not a basis for avoiding liability under the TCPA:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer

8

that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

50. Moreover, that FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

51. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

52. Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiff and only known to Defendant.

53. If Defendant hired third-party telemarketers to place the calls at issue, the marketing activities of those telemarketers were subject to Defendant's direction and control.

54. Defendant provided third-party telemarketers with scripts and materials to market its services.

55. Defendant authorized the third party telemarketers to use their trademarks and business names, and authorized the recording to state that it was from Defendant directly.

9

56. Defendant accepted leads generated by its third-party telemarketers and therefore ratified its agents' violations of the TCPA by accepting leads and deriving profit from sales imitated by unlawful robocalls.

57. Defendant acted as a principal to telemarketing agent(s) whose identity or identities are unknown at this time.

58. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from its agents' TCPA violations.

59. For the count identified below, for calls directly placed by Defendant, it is directly liable. To the extent any call was made by a third-party agent acting on Defendant's behalf, Defendant is vicariously liable as it encouraged and benefitted from its agents' violative conduct.

## CLASS ALLEGATIONS

60. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b) on behalf of himself and a class and subclass of similarly situated individuals as defined below:

> **Class**: All persons and entities throughout the United States (1) to whom Defendant placed a call, (2) directed to a number assigned to a cellular telephone service, (3) with an artificial or prerecorded voice the same or similar to that received by Plaintiff, (4) from four years prior to the date of this class action complaint through the date of class certification.

> **Subclass**: All persons and entities throughout the United States (1) to whom Defendant placed a call, (2) directed to a number assigned to a cellular telephone service, (3) but not assigned to a person or entity who is not an active customer in Defendant's computer systems, (4) with an artificial or prerecorded voice the same or similar to that received by Plaintiff, (5) from four years prior to the date of this class action complaint through the date of class certification.

61. Excluded from the class and subclass are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

62. Plaintiff reserves the right to amend or modify the class definitions consistent with the record developed in this Action.

63. Upon information and belief, the proposed class and subclass are so numerous that, upon information and good faith belief, od faith belief, joinder of all members is impracticable.

64. The exact number of class and subclass members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

65. The proposed class and subclass are ascertainable because they are defined by reference to objective criteria.

66. In addition, the cellular telephone numbers of all members of the class and subclass can be identified in business records maintained by Defendant and third parties, including class members.

67. Plaintiff's claims are typical of the claims of the members of the class because all of the class members' claims originate from the same conduct, practice and procedure on the part of Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each class member.

68. Like all members of the proposed class, Plaintiff received artificial or prerecorded voice messages from Defendant, without his consent, in violation of 47 U.S.C. § 227.

69. Like all members of the proposed subclass, Defendant placed calls, in connection with which it used an artificial or prerecorded voice, to Plaintiff's cellular telephone number even though he was not a customer of Defendant.

70. Plaintiff will fairly and adequately protect the interests of the members of the class and subclass and has retained counsel experienced and competent in class action litigation.

71. Plaintiff has no interests that are contrary to or in conflict with the members of the class or subclass that he seeks to represent.

72. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

73. Furthermore, as the damages suffered by individual members of the class and subclass may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class and subclass to individually redress the wrongs done to them.

74. There will be little difficulty in the management of this action as a class action.

75. Issues of law and fact common to the members of the class and subclass predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the class and subclass.

76. Among the issues of law and fact common to the class and subclass are:

   a. Defendant's violations of the TCPA as alleged in this class action complaint;

   b. Defendant's use of an artificial or prerecorded voice in connection with its calls;

   c. Defendant's practice of delivering artificial or prerecorded voice messages to non-customers;

   d. Whether Defendant is liable for artificial and prerecorded voice messages it delivered to persons without their prior consent;

   e. the availability of statutory damages.

77. Absent a class action, Defendant's violations of the law will be allowed to proceed without a full, fair, judicially supervised remedy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b) *et seq.* –
### (Prerecorded Voice Violations – Individually and on Behalf of the Class and SubClass)

78. Plaintiff incorporates the allegations in the previous paragraphs as if fully stated in this Count.

79. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number, for non-emergency purposes and without his consent.

80. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the members of the class and subclass are entitled to damages in an amount to be proven at trial.

### **Prayer for Judgment**

WHEREFORE, Plaintiff, individually, and or behalf of all others similarly situated, requests the Court grant the following relief:

a) Determining that this action is a proper class action and designating Plaintiff as the class representative under Rule 23 of the Federal Rules of Civil Procedure;

b) Adjudging that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii), and enjoining Defendant from continuing to place calls, in connection with which it uses an artificial or prerecorded voice, to Plaintiff and members of the proposed class and subclass without their prior express consent, and from committing further violations of 47 U.S.C. § 227(b)(1)(A)(iii);

c) Awarding Plaintiff and members of the class and subclass statutory damages pursuant to 47 U.S.C. § 227(b)(3) in an amount up to $1,500.00 per violation;

d) Awarding Plaintiff and members of the class and subclass their reasonable costs, expenses, and attorneys' fees incurred in this action, including expert fees, pursuant to Rule 23 of the Federal Rules of Civil Procedure; and

e) Awarding other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff, demands a jury trial in this case on any and all triable issues.

                                  Respectfully submitted,

Date: October 1, 2024                      _s/Max S. Morgan_____
                                                Max S. Morgan, Esquire
                                                THE WEITZ FIRM, LLC
                                                1515 Market Street, #1100
                                                Philadelphia, PA 19102
                                                Tel: (267) 587-6240
                                                Fax: (215) 689-0875
                                                max.morgan@theweitzfirm.com

                                                *Counsel for Plaintiff and the proposed classes*